IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SOUTHEASTERN PIPETRADES HEALTH AND WELFARE FUND, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| vs. | ) CASE NO. 3:13-0809<br>) JUDGE CAMPBELL/KNOWLES<br>) |
| FRIEDMAN, RODMAN & FRANK, P.A., ROBYN SMITH ELLIS, ADMINISTRATOR FOR THE ESTATE OF DONNA MARIE OSTENDORF, and HENRY R. OSTENDORF, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |
| ROBYN SMITH ELLIS, ADMINISTRATOR FOR THE ESTATE OF DONNA MARIE OSTENDORF, | )<br>)<br>)<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| TAMI M. JONES and LISA M. JONES, | )<br>) |
| Third-Party Defendants. | ) |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Plaintiff's Motion for Summary Judgment. Docket No. 87. Plaintiff has filed a supporting Memorandum (Docket No. 88), two Declarations with Exhibits (Docket Nos. 89, 90), and a Statement of Undisputed Material Facts (Docket No. 91).

Defendant Robyn Smith Ellis, the Administrator of the Estate of Donna Marie Ostendorf, has filed a Response to the Motion.[1] Docket No. 93. Defendant Ellis has also filed a Response to Plaintiff's Statement of Undisputed Material Facts. Docket No. 94.

Third-Party Defendants Lisa Jones and Tami Jones, who are the adult children of Ms. Ostendorf from a previous marriage, have filed a Response in Opposition to the Motion (Docket No. 99), a supporting Memorandum (Docket No. 99-1), a Statement of Material Undisputed Facts (Docket No. 99-2), and the Declaration of their counsel (Docket No. 99-4).

Defendants Friedman, Rodman & Frank, and Henry R. Ostendorf, have filed a Response in Opposition to the Motion. Docket No. 100. They have filed their own Statement of Undisputed Material Facts. Docket No. 101. They have filed a Response to Plaintiff's Statement of Undisputed Material Facts. Docket No. 102. They have also filed several Exhibits. Docket No. 104.

Plaintiff has filed a Reply Brief in support of its Motion for Summary Judgment (Docket No. 106), and a Declaration (Docket No. 107). Plaintiff has also filed its Responses to the Statement of Additional Facts filed by Third-Party Defendants Tami Jones and Lisa Jones (Docket No. 108), and its Responses to the Statement of Material Undisputed Facts filed by the Friedman Firm and Henry Ostendorf (Docket No. 109).

Defendant Ellis, the Administrator, has filed a Response to the Statement of Undisputed Material Facts filed by Friedman, Rodman & Frank, and Henry R. Ostendorf. Docket No. 110. She has also filed a Response to the Statement of Undisputed Material Facts filed by Tami and

---

[1] The Administrator does not oppose the Motion, but opposes "a ruling in favor of Plaintiff which is couched in a way that anyone could interpret as a judgment 'against' the Administrator . . . ." Docket No. 93.

Lisa Jones. Docket No. 111. Tami and Lisa Jones also filed a "Response" to Plaintiff's Reply. Docket No. 115.

Judge Campbell has referred the instant Motion for Summary Judgment to the undersigned for a Report and Recommendation. Docket No. 92.

This is a reimbursement case involving a health benefit fund and its plan that are subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendant Henry R. Ostendorf and his wife, Donna Marie Ostendorf, were covered under Plaintiff's ERISA Plan, which provided them health benefits. The Plan has a reimbursement provision that generally provides that the Fund is entitled to recover from participants for medical expenses that the Plan paid on their behalf.

Henry and Donna Marie Ostendorf were participants in the Plan.

Mr. and Ms. Ostendorf were in a serious car accident in Florida on May 19, 2012. Unfortunately, Ms. Ostendorf died on May 25, 2012, from injuries she sustained in the accident. As a result of the accident, Mr. and Ms. Ostendorf received $146,753.47 in medical benefits from the Fund. Friedman, Rodman & Frank, a law firm in Florida, recovered $210,000 for Mr. Ostendorf and the Estate of his wife by settling insurance claims from the car accident. Defendants, however, did not reimburse Plaintiff. Instead, the Friedman Firm paid more than $140,531.68 to the Administrator of Ms. Ostendorf's Estate.

Third-Party Defendants Lisa and Tami Jones, who are Ms. Ostendorf's children from a previous marriage, claim that they are entitled to the proceeds in the Estate. Plaintiff, on the other hand, contends that it is entitled to $140,531.68 of the funds in the Estate pursuant to the plain language of the Plan and its reimbursement provisions. Plaintiff also contends that the

Friedman Firm should be jointly liable for the amount sought. The Administrator of Ms. Ostendorf's estate, Robyn Smith Ellis, is holding the funds that are in dispute, and takes no position as to the proper recipient of the funds.

## II. Facts

The following material facts are in a form required by Fed. R. Civ. P. 56 and, unless otherwise indicated, are undisputed.

The Fund was established in 1952 as the result of collective bargaining agreements with various employers. Faulkner Decl. (Docket No. 89) ¶ 2. It is a non-profit trust fund. *Id*., Ex. B (Trust Agreement) (Docket No. 89-2) Art. II, § 1 at 5. The Fund was established and continues to function for the purpose of providing health benefits for eligible participants. Docket No. 89, ¶ 2.

The Fund is subject to ERISA, as well as the Taft-Hartley Act, and it is governed by a Board of Trustees equally representing employers and unions. *Id*. It is financed by employer contributions as specified in collective bargaining agreements, employee contributions, and earnings from investments. *Id*.

Mr. Ostendorf is a union pipefitter. Ostendorf Depo. (Docket No. 90-1) 5:17-7:10. He began this line of work in 1991, and, after a few months, he started receiving medical coverage from the Fund. *Id*. 58:16-59:7. He married Donna Marie Ostendorf in 2005. *Id*. 8:8-19. As a result of their marriage, she also received medical coverage from the Fund. *Id*. 59:8-13. Mr. and Ms. Ostendorf were both participants of the Fund in 2012. Faulkner Decl. ¶ 3.

On May 19, 2012, the Ostendorfs were involved a car accident in Florida. Ostendorf Depo. 8:20-24, 64:6-10. Both of them received treatment at Kendall Regional Medical Center.

*Id*. 66:1-11. Ms. Ostendorf later died as a result of the accident. *Id*. 8:20-22.

On June 27, 2012, Mr. Ostendorf retained the Friedman Firm to represent him with respect to the car accident. *Id.* 77:17-78:23. The Ostendorfs had insurance coverage through Allstate. Docket No. 109, No. 15. Their policy provided bodily injury liability coverage in the amount of $100,000 per claim/$200,000 per accident and uninsured/underinsured motorists coverage in the amount of $100,000. Docket No. 109, p. 6, No. 6.

The Friedman Firm contacted an attorney named Ann Green in Virginia and asked her to open an estate for Ms. Ostendorf. Friedman Firm 30(b)(6) Depo. (Docket No. 90-2) 28:17-24. Ms. Green, as administrator of the Estate, later retained the Friedman Firm to recover money for the car accident. *Id*. 33:15-35:5.

The Plan document for the Fund has a section entitled "Reimbursement of Paid Claims," which requires participants to reimburse the Fund from any monetary recovery they might obtain. *See generally* Faulkner Decl., Ex. A (Plan) Art. VI, § 9 at 50-54. Prior to 2012, Mr. Ostendorf was aware that the Fund had a reimbursement provision (which will be quoted below). Ostendorf Depo. 62:2-16.

The Fund paid a total of $146,753.47 in medical expenses for the Ostendorfs. The Fund paid $6,221.79 for Mr. Ostendorf's medical treatment as a result of the car accident. Faulkner Decl. ¶ 4; Fund's Req. for Admissions to Henry Ostendorf (Docket No. 90-4) ¶ 1; Henry Ostendorf's Resp. to Req. for Admissions (Docket No. 90-5) ¶ 1. The Fund paid $140,531.68 for Ms. Ostendorf's medical treatment as a result of the car accident. Faulkner Decl. ¶ 4; Lisa Jones's Resp. to Req. for Admissions (Docket No. 90-9) ¶ 3; Tami Jones's Resp. to Req. for Admissions (Docket No. 90-10) ¶ 3; Fund's Req. for Admissions to Henry Ostendorf ¶ 2;

Henry Ostendorf's Resp. to Req. for Admissions ¶ 2; Fund's Req. for Admissions to Friedman Firm ¶ 1; Friedman Firm's Resp. to Req. for Admissions ¶ 1.

The Friedman Firm obtained insurance settlements related to the car accident. It received a $10,000 check "made payable to Friedman, Rodman, & Frank, P.A. Trust Account and Henry R. Ostendorf," and it received three checks totaling $200,000 "made payable to Friedman, Rodman, & Frank, P.A. Trust Account and Estate of Donna [or Donna Marie] Ostendorf." *See* Fund's Interrogs. to Friedman Firm (Docket No. 90-9) ¶ 3; Friedman Firm's Resp. to Interrogs. (Docket No. 90-7) ¶ 3.

The Friedman Firm forwarded the three checks totaling $200,000 to Ms. Green, the original administrator of the Estate. *See* Administrator's Third-Party Complaint ¶ 8 (Docket No. 63); Fund's Interrogs. to Friedman Firm ¶ 4; Friedman Firm's Resp. to Interrogs. ¶ 4. Ms. Green turned the funds over to her successor, Robyn Smith Ellis, "who now holds those funds." Administrator's Third-Party Complaint ¶ 8. Ms. Ellis, the current Administrator, is safeguarding the funds pending the Court's decision in this case. *Id*. ¶¶ 10, 14.

Of the $10,000 recovered for Mr. Ostendorf, the Friedman Firm kept $2,074 in attorney's fees and costs, and disbursed $7,926 to Mr. Ostendorf. *Id*. 35:15-36:2, Ex. 9; Ostendorf Depo. 99:3-22. Mr. Ostendorf has not reimbursed the Fund for any of his benefits. *Id.* 107:20-24. He is still holding his recovery of $7,926, though, and it is available for reimbursement. *Id.* 100:8-12. For reasons that are not readily apparent from the record, the Fund seeks only $6,221.79 for Mr. Ostendorf's medical treatment.

In late 2012 and early 2013, a claims manager for the Fund sent letters to the Friedman Firm, inquiring about a recovery and demanding reimbursement. *See, e.g.,*, Friedman Firm

30(b)(6) Depo., Ex. 15, 17. These efforts were fruitless.

At a meeting on October 24, 2013, the Fund's Board of Trustees reviewed the Ostendorf matter. Faulkner Decl., Ex. C (Board of Trustees Minutes), at 13-14. The Plan specifically provides, "The Trustees have full authority to construe the provisions of this Plan and any construction placed upon the Plan by the Trustees shall be final and binding upon all parties." Docket No. 89-1, p. 62. The Board of Trustees unanimously decided that the Fund is entitled to $6,221.79 in reimbursement from Mr. Ostendorf and $140,531.68 in reimbursement from the Estate. Docket No. 89-3, p. 4.

The Plan's reimbursement provisions state in relevant part:

> **Section 9 - Reimbursement of paid claims:**
>
> Situations sometimes arise where benefits are payable from this Fund for medical or other expenses incurred by an Eligible Employee or Dependent ("Covered Person"), due to an injury, sickness or condition caused to the Covered Person, and the Covered Person has a right to receive full or partial payment of his or her damages caused by the injury from some other person or entity. Typical examples of such situations are where the Covered Person is injured in an automobile accident and another driver is responsible, or on the property of someone else and the property owner is liable. In such cases, the other person's automobile, homeowner's or property insurance carrier may be liable and pay for all or part of the Covered Person's injury, although claims for the medical expenses have been submitted and paid by this Fund. In these and other similar situations, the Covered Person may receive a double payment of medical bills or may have a right to recover the amounts paid by the Fund.
>
> In accordance with the Employee Retirement Income Security Act (ERISA), a federal law which applies to this Fund, the Fund is required to take all steps which are reasonable and necessary to maintain the financial health of the Fund so that the Fund can continue to provide all benefits. Because of the increasing cost of medical care, the Fund has determined that it is in the best interest of the Fund and its participants and beneficiaries to adopt

7

and incorporate provisions to enable the Fund to recover all sums it has paid to or on behalf of a Covered Person and for which another person or entity may pay damages to or for the Covered Person.  Under these provisions, the Fund has the right to be reimbursed in full for all sums paid by the Fund to or on behalf of a Covered Person to the extent that the Covered Person has recovered and/or has a right to recover damages from another person or entity.

If a claim is filed with the Fund for benefits in connection with an  injury, sickness or condition arising in such a situation, the Fund will still pay all benefits.  However, these benefits will be paid only after the Covered Person has signed and returned to the Fund a written agreement, (the "Agreement"), giving the Fund full right of recovery against all persons or entities which may be liable to pay damages to the Covered Person, the right of recovery to be for the full amount of sums paid by the Fund.  It is the purpose of these provisions and the Agreement to give the Fund a right of recovery, which includes a loan agreement, a right to reimbursement, a right to subrogation and a first priority of recovery, all of which are described in the Agreement.

The Plan's reimbursement provisions will be administered as follows:

If a claim is submitted in connection with an injury, sickness or condition arising in a situation where another person or entity may be required to pay damages to or for the Covered Person, the Covered Person must notify the Fund and provide the Fund with specific details and information regarding the situation.  Any corrections as well as additional information or documentation must be supplied to the Fund by the Covered Person on an ongoing basis.

In order to receive benefits from the Fund, the Eligible Employee must complete, sign, and return the written Agreement, and the Agreement will give the Fund a full right or recovery against all persons or entities which may be liable for damages to the Covered Person and will obligate the Covered Person to repay the Fund a loan in the amount of sums paid by the Fund, and will give the Fund a right of reimbursement and subrogation.  If a claim is made on behalf of a Covered Person who is married, the spouse must sign the Agreement.  If a claim is made on behalf of a Covered Person who is a minor, the minor's parent(s) and/or

> legal guardian must sign the Agreement on behalf of the minor.
>
> Covered Persons shall do nothing that will prejudice the Fund's right of recovery, and common law doctrines such as "make whole" and "common fund" or other similar doctrines will not be applied to reduce the Fund's right of recovery, and any subrogation or reimbursement or loan payment by the Covered Person to the Fund shall be as to any amounts recoverable by the Covered Person, without regard to contributory or comparative fault of the Covered Person. Further, the Fund's entitlement shall be applied against any recovery, except for loss of consortium, to which the Covered Person is entitled, including but not limited to damages for physical injury and impairment, future medical costs, past and future pain, suffering and mental anguish and past and future lost earnings.
>
> . . .
>
> If a recovery is obtained by the Covered Person, the Fund's entitlement shall be as to any such payment; and, the Fund's entitlement shall also be applied to any amounts the Covered Person receives or is entitled to receive from any liable person or entity and to any liability or other insurance payment on behalf of the liable person or entity.
>
> If a recovery is obtained by the Covered Person, either through settlement, administrative or judicial proceedings, the Fund is to be fully reimbursed, from the first dollars paid to or received by the Covered Person, for all sums paid by the Fund on behalf of the Covered Person as well as for those benefits that are reasonably foreseeable. Any question about the apportionment of a damages award or settlement shall be resolved by the Trustees, who have complete discretion in establishing the reasonable portion of such award/settlement to which the Fund has a right of recovery, reimbursement, subrogation or loan repayment.

Plan Art. VI (Docket No. 89-1) § 9, at 50-52.

In summary, the Plan provides "[T]he Fund's entitlement shall also be applied to any amounts the Covered Person receives or is entitled to receive from any liable person or entity and to any liability or other insurance payment on behalf of the liable person or entity." *Id*.

9

The Fund's entitlement is applied against any recovery, except for loss of consortium, "to which the Covered Person is entitled, including but not limited to damages for physical injury and impairment, future medical costs, past and future pain, suffering and mental anguish and past and future lost earnings." *Id.* The Fund has a "first priority of recovery." *Id.*, at 51. The Fund is to be "fully reimbursed" if "a recovery is obtained by the Covered Person, either through settlement, administrative or judicial proceedings . . . ." *Id.*, at 52.

Mr. and Ms. Ostendorf did not have children together. Tami Jones and Lisa Jones are the adult children of Ms. Ostendorf from a previous marriage. Docket No. 109, p. 2. Apparently the only potential beneficiaries of the estate are Tami Jones, Lisa Jones, and Henry Ostendorf.

### III. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere

allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

### IV. ERISA

ERISA creates a civil action for "appropriate equitable relief" to enforce the terms of a Plan. 29 U.S.C. § 1132(a)(3). This is the enforcement mechanism for a Plan provision that requires reimbursement from a participant. *U.S. Airways, Inc. v. McCutchen,* 569 U.S. ___, ___, 133 S. Ct. 1537, 1542 (2013). The reimbursement provision creates an "equitable lien by agreement," which attaches to the participant's recovery as soon as he gets it. *Id.* at 1544-45, citing *Sereboff v. Mid-Atlantic Med. Servs., Inc*., 547 U.S. 356, 362-65 (2006). A Plan participant, in a reimbursement action, cannot rely upon equitable defenses that are at odds with the Plan document. 569 U.S. at 1546-47.

"When an ERISA benefits plan gives the administrator discretion in interpreting its terms or making benefit determinations, both [the Sixth Circuit] and the district court review the administrator's decision under the arbitrary and capricious standard." *Price v. Board of Trustees,* 632 F.3d 288, 295 (6th Cir. 2011) (citing cases). This is the "least demanding form

11

of judicial review," and the decision, to be upheld, must be only "rational in light of the Plan's provisions." *McClain v. Eaton Corp. Disability Plan,* 740 F.3d 1059, 1064 (6th Cir. 2014) (quotations and citation omitted).

### V.  Analysis

Initially, the Court notes that the parties agree on two matters.  First, Mr. Ostendorf does not dispute Plaintiff's claim that it is entitled to reimbursement of $6,221.79 that Plaintiff paid on his behalf.  Docket No. 100, p. 4-5.  Thus, the only amount at issue in the instant Motion is $140,531.68.

Second, the Administrator states that "she is merely a stakeholder, [and] neither supports nor opposes the grant of summary judgment."  Docket No. 93, p. 4.  The Administrator, however, strongly opposes the entry of anything that even resembles a judgment against her.  She points out that, although Plaintiff repeatedly seeks judgment against the Administrator, what it really seeks is the entry of an Order, by way of summary judgment, commanding the Administrator to disburse to it funds in the amount of $140,531.68.  Furthermore, the Administrator states that she was granted leave to amend her Answer in this action to assert Third-Party claims against Lisa Jones and Tami Jones who are the possible beneficiaries of Donna Ostendorf's Estate, along with Henry Ostendorf.  Docket No. 93, p. 2.  The Administrator states, "The purpose of this claim was not to seek relief against Tami and Lisa, but to bring them before the Court so that they, as real parties in interest, can protect their rights."  Docket No. 93, p. 2-3.

Plaintiff makes a relatively simple argument as to why it is entitled to be reimbursed for money it paid on behalf of Ms. Ostendorf.  Ms. Ostendorf was a "Covered Person" under

12

the Plan. The term "Covered Person" means, in part, an eligible employee. Plan Art. II, Section 6 at 6. An "Eligible Employee" is someone who satisfies the eligibility rules. *Id.,* § 9 at 8. Mr. Ostendorf became eligible for coverage through his work, and he was a participant of the Fund in 2012. The term "Covered Person" includes the "Dependents" of an "Eligible Employee." Plan Art. II, Section 6 at 6. A spouse is a "Dependent." *Id.*, § 7 at 6. Ms. Ostendorf was married to Mr. Ostendorf from 2005 until the fatal car accident in 2012.

As quoted above, the plan provides that the reimbursement provision "enable[s] the Fund to recover all sums it has paid to or on behalf of a Covered Person and for which another person or entity may pay damages to or for the Covered Person." The Fund obviously paid sums to or on behalf of Ms. Ostendorf and for which another person or entity may pay damages to or for Ms. Ostendorf. The Fund also has the right to be reimbursed in full for all sums paid by it to or on behalf of Ms. Ostendorf to the extent that Ms. Ostendorf has recovered and/or has a right to recover damages from another person or entity. Ms. Ostendorf did recover and/or had a right to recover damages from another person or entity. The Fund, therefore, is entitled to recover the sum at issue.

Because Ms. Ostendorf died in the accident, the duty to reimburse passes to her Administrator. Federal common law rules of contract interpretation apply to an ERISA plan. *University Hospitals of Cleveland v. S. Lorain Merchants Association Health and Person Welfare Benefit & Trust,* 441 F3 430,437 (6th Cir. 2006). Contracts generally bind a party's personal representative. As the U.S. Supreme Court has stated:

> It is a presumption of law that the parties to a contract bind not only themselves but their personal representatives. Executors, therefore, are held to be liable in all contracts of the testator which are broken in its lifetime, and, with the exception of contracts in which personal skill or taste is required, on all

13

contracts broken after his death.

*United States ex rel Wilhelm v. Chain,* 300 US 31,35 (1937) (footnote and citations omitted).

Thus, the Plan reimbursement provision binds the Administrator. *See McInnis v. Provident Life & Accident Ins. Co.,* 21 F.3d 586 (4th Cir. 1994) (where Plan provided for reimbursement from a settlement to "you or a Dependent," Administrator recognized that the terms of the Plan required him to repay those benefits to the Plan if he recovered from a third party); *Rhodia, Inc. v. Bollinger*, 2008 US Dist. LEXIS 22045 (D. N.J.) (where Plan required reimbursement "from any settlement you may receive," plaintiff had "an equitable claim" on money that comes in to the possession of a beneficiary, or his estate). *See also Norstan Inc. v. Lancaster*, 2014 US Dist. LEXIS 87858 (D. Ariz.) (reimbursement provision expressly included estate, but court also cited "well-established law" that parties to a contract bind themselves and their personal representatives).

Plaintiff also relies on the Board of Trustees' decision to require reimbursement from the Administrator.

The Friedman Firm's Response in Opposition to the Motion is grounded in the proposition that the Plan does not provide for a right of subrogation against the claims of non-covered survivors in a wrongful death matter. Docket No. 100, p. 1-2. They argue that, at best, the Plan is ambiguous as to whether the claimed damages of Tami Jones and Lisa Jones are subject to the reimbursement provision. The Court must interpret the Plan strictly against the drafter and liberally in favor of the insured and, therefore, the proceeds are not subject to the reimbursement provision of the Plan. Furthermore, Defendant Friedman Firm argues that the Board of Trustees acted arbitrarily and capriciously when it interpreted the Plan, because

14

its decision essentially "redrafts the Plan by adding a new classification from which the Fund has a subrogation right that did not exist." *Id*., p. 2.

The Friedman Firm contends that Tami Jones and Lisa Jones recovered under the Allstate policy as "survivors of Donna Ostendorf." Defendants set forth this proposition in their Statement of Material Facts. Docket No. 101, p. 5, No. 17. As authority for this proposition, Defendants cited "Doc. 90-5 at 2-3," which is part of the Interrogatory answers of Henry R. Ostendorf. There is, however, nothing in the cited material that supports the statement that Tami and Lisa Jones recovered under the Allstate policy as "survivors of Donna Osterndorf."

Plaintiff states that the Jones sisters did not recover any funds as a result of the car accident. Docket No. 109, ¶ 17. Additionally, the Jones sisters stated in their interrogatory responses that they did not recover any funds as a result of the accident. Docket No. 90-9, ¶ 4-5; Docket No. 90-10, ¶ 4-5. As best the Court can tell, nothing in the record indicates that Tami Jones and Lisa Jones have "recovered" anything.

The Friedman Firm also takes the position that the Fund does not contain terms and conditions obligating non-Covered Persons (such as Tami Jones and Lisa Jones) to reimburse the Fund for recovery of damages in a wrongful death matter. *Id*., p. 7, No. 20. The Fund, however, states that it is not seeking reimbursement from non-Covered Persons. *Id.*

The Friedman Firm argues that the original Administrator, Ann Green, was retained by the Estate to establish a special needs trust for Tami Jones and Lisa Jones as survivors of the Estate of Donna Ostendorf. Docket No. 109, p. 8, No. 22. Plaintiff, however disputes this statement. Plaintiff states that Ms. Green:

15

> was asked to open and administer the Estate of Donna Ostendorf to facilitate the payment of funds in connection with the Ostendorf's automobile accident. She did not participate in any decision concerning the handling of any claim arising from the automobile accident or any decision as to the allocation of any funds paid by any person in connection with the accident. She merely received the funds as Administrator of the Estate.

Docket No. 109, p. 8, No. 22, *citing* Docket No. 90-8 ¶ 7. The proceeds at issue have not been disbursed and are currently being held with the Administrator, and there is nothing in the record to indicate that a special needs trust was ever created. *Id.*, p. 9, No. 25.

The Friedman Firm further argues that there is a genuine issue of material fact as to whether the Board of Trustees acted arbitrarily and capriciously in construing the Plan. Docket No. 100, p. 12. The Friedman Firm argues that the Trustees' decision "was not rational, not based on substantial evidence, a mistake of law, and based upon a selective review of the record and erroneous assumption." Docket No. 100, p. 12. The Friedman Firm argues in part:

> The Board of Trustees' minutes state that because Donna had a right to recovery for injuries under the Allstate policy, payments by Allstate would be subject to the Fund's entitlement. Donna, however, did not have a right to recovery because she did not survive her injuries. Donna is not able to collect any damages for her own death. It is her survivors, Tami and Lisa, who have a right to recovery.
>
> In support of its motion, the Fund states that if Donna had survived and obtained the payments in her own name, Donna would owe reimbursement to the Fund. This is an erroneous assumption.

Docket No. 100, p. 13.

The Board of Trustees' minutes actually state that Mr. Rowe, one of the Trustees, "moved that the trustees should resolve and decide the Allstate Insurance Company was an entity from which Mr. and Ms. Ostendorf had a right to recovery for their injuries under the

16

insurance policy, and as such, payments by Allstate Insurance Company would be subject to the funds's entitlement." Docket No. 89-3, p. 3-4. None of the remainder of the above-quoted material is cited to the record, and the arguments made therein are not persuasive.

The Friedman Firm essentially argues that the Board of Trustees's decision was arbitrary and capricious because it was wrong. As has been discussed above, however, Ms. Ostendorf clearly owed reimbursement to the Fund.

The Friedman Firm cites the Florida Wrongful Death Act, stating that it provides remedies for the survivors of a decedent for loss companionship and protection, and also support and services as a result of the tort feasor. Docket No. 100, p. 15. Insofar as the record shows, however, no "wrongful death" action was ever filed, and the Friedman Firm has previously admitted that the money was paid as "medical expenses."

Additionally, ERISA pre-empts any state law that would interfere with the Fund's reimbursement provision. *See* 29 U.S.C. § 1144(a) (ERISA supercedes any state laws that "relate to any Employee Benefit Plan"); *Thomas v. Administrative Commission of the Wal-Mart Stores, Inc.,* 210 F. Supp. 2d 1296, 1300-01 (M.D. Fla. 2002) (holding that plan document would dictate proper distribution of settlement and that "the Florida wrongful death statutes are pre-empted by ERISA, to the extent that the state law precludes operation of the plan's reimbursement provision").

As discussed above, Defendant attempts to avoid the reimbursement provisions of the Plan by arguing that: (1) Lisa Jones and Tami Jones are not "covered persons" under the plan; (2) the reimbursement provision does not speak directly to whether it applies to non-Covered Persons; and (3) therefore, construing the Plan strictly against the drafter and liberally in favor

17

of the participant, the reimbursement provision simply does not apply.

The short answer to Defendants' argument is that it does not matter whether the reimbursement provision specifically applies to non-Covered Persons. As discussed above, the provisions of the Plan are very broad. The Plan enables "the Fund to recover all sums it has paid to or on behalf of a Covered Person and for which another person or entity may pay damages to or for the Covered Person." Plan Art. VI, § 9 at 51. The Plan provides, "the Fund has the right to be reimbursed in full for all sums paid by the Fund to or on behalf of a Covered Person to the extent that the Covered Person has recovered and/or has a right to recover damages from another person or entity." *Id*. The "Covered Person" is Ms. Ostendorf, not Tami Jones or Lisa Jones. Ms. Ostendorf clearly either recovered or had a right to recover damages from another person or entity as a result of the automobile accident. The reimbursement provision, therefore, plainly applies, and Defendants' arguments are essentially irrelevant.

Lisa and Tami Jones have also filed a Response in Opposition to the Motion for Summary Judgment (Docket No. 99), and a supporting Memorandum (Docket No. 99-1). With all due respect, the position of the Jones sisters is rather difficult to ascertain. The thrust of their position is based on the argument that some of the funds obtained by the Friedman Firm from Allstate came from the Allstate policy's bodily injury and uninsured motorist coverage.

The Jones sisters argue that the "actual events" demonstrate that the Rodman firm "obtained the monies from the BI and UM coverages on Henry Ostendorf's car on behalf of Lisa and Tami Jones, not Donna Marie Ostendorf, or her Estate." Docket No. 99-1, p. 5. This

18

statement, however, is not cited to the record, and the record shows that the relevant checks from Allstate were made payable to the Friedman Firm and the Estate of Donna Ostendorf.

The Jones sisters further raise arguments concerning wrongful death damages under Florida law. Again, however, there is nothing in the record to show that a wrongful death action was ever filed, and ERISA would pre-empt the Florida wrongful death statutes.

The Jones sisters also make an argument concerning Supplemental Security Income benefits, qualifications for Section 8 housing, and the "Program Operations Manual System" of the Social Security Administration. The Court does not understand the relevance of this argument.

### VI. Conclusion

For the foregoing reasons, the undersigned concludes that there are no genuine issues as to any material fact and that Plaintiff is entitled to a judgment as a matter of law. The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket No. 87) be GRANTED IN PART, and that the Administrator be ordered to pay to Plaintiff the sum of $140,531.68 from Ms. Ostendorf's estate. The Court should further ORDER that Henry R. Ostendorft pay to the Fund the sum of $6,221.79, which he does not contest.

The instant motion should be DENIED AS MOOT with regard to Plaintiff's claims against Friedman, Rodman & Frank, P.A. The record is clear that the money to be paid to the Fund will come from the estate of Donna Ostendorf which the Administrator is holding pending a resolution of the issues in this action. Given these facts, the Court need not decide whether the Friedman Firm should be jointly liable.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

19

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

    /s/ E. Clifton Knowles
E. Clifton Knowles
United States Magistrate Judge